Wiley Eugene MARTIN, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 01–05–01173–CR to
01–05–01176–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

May 3, 2007.

Greg N. Russell, Russell, Ibrahim & El-
liott, LLP, Houston, TX, for Appellant.

· Susan W. Martin, Kurt Sistrunk, Crimi-
nal District Attorneys, Galveston, TX, for
Appellee.

Panel consists of Justices NUCHIA,
KEYES, and HIGLEY.

## OPINION

EVELYN V. KEYES, Justice.

A jury convicted appellant, Wiley Eu-
gene Martin, of four counts of sexual as-

sault of a child and assessed punishment at 38 years in prison for each count, to be served concurrently, and a fine of $5,000 for each count. *See* TEX. PEN.CODE ANN. § 22.011(a)(2)(A) (Vernon Supp.2006). In his sole point of error, appellant argues that the trial court erred in admitting evidence of a prior felony conviction from the State of North Carolina during the punishment phase.

We affirm.

## Background

A jury convicted appellant of four counts of sexual assault of a child. In addition to the primary offense of sexual assault, the enhancement paragraph in each of the four indictments alleged that appellant had been previously convicted of "Uttering a Forged Instrument," a felony offense, in the Superior Court of Gaston County, North Carolina on July 22, 1970. During the punishment phase, appellant pleaded "not true" to each of the four enhancement paragraphs.

As evidence in support of the enhancement paragraph, the State introduced a North Carolina penitentiary (pen) packet. Appellant's pen packet consists of a copy of an inmate fingerprint card and summary record. The fingerprint card lists the crime committed, "Uttering a Forged Instrument," the inmate fingerprinted, "Martin, Wiley Eugene," and the term of confinement, five to seven years.[1] The inmate summary record lists the crime committed, "Forgery," and the inmate committed, "Martin, Wiley E." The sentence date of July 22, 1970, date of birth, sex, race, and physical description on the fingerprint card match the corresponding data on the inmate summary record. The

State's fingerprint identification expert, Sergeant Mike Bell of the Galveston County Sheriff's Identification Division, testified that appellant's fingerprints[2] matched those included in the pen packet. In addition, both the fingerprint card and the inmate summary record document four escape attempts, and the inmate summary record includes a release date of April 4, 1976. A manager of the Combined Record Section of the North Carolina Department of Corrections certified both the fingerprint card and the inmate summary record as exact copies of documents that appeared in the files of the Combined Record Section.

During the punishment phase of trial, appellant objected to the admission of the pen packet as evidence to support the enhancement paragraph of each indictment because the packet lacked a properly certified judgment and sentence or a functional equivalent of a properly certified judgment and sentence for the crime of "Uttering a Forged Instrument." The trial court admitted the pen packet over appellant's objection. The jury returned a finding of "true" as to the prior felony conviction in the enhancement paragraphs of all four indictments.

## Analysis

In his sole point of error, appellant argues that, during the punishment phase, the trial court erred in admitting the State's evidence of his prior conviction. Specifically, appellant argues that the North Carolina pen packet was improperly admitted because it lacked a properly certified judgment and sentence or the functional equivalent of such a judgment and

---

1. Alongside the term of sentence, the word "Felon" is handwritten on the fingerprint card.

2. The State introduced appellant's current fingerprint card.

sentence for the crime of "Uttering a Forged Instrument."

### Standard of Review

■ Our standard of review for the trial court's decision to admit evidence is abuse of discretion. *See Salazar v. State*, 38 S.W.3d 141, 151 (Tex.Crim.App.2001); *see also Elliott v. State*, 858 S.W.2d 478, 488 (Tex.Crim.App.1993). We will reverse only if the trial court's decision to admit the evidence was "outside the zone of reasonable disagreement." *Salazar*, 38 S.W.3d at 151; *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1990) (op. on reh'g).

### Proof of Enhancement

When the State offers an out-of-state pen packet to prove the existence of a criminal record during the punishment phase, it has the burden of either offering proof of our sister state's evidentiary requirements or requesting that the trial court take judicial notice of those requirements. *Langston v. State*, 776 S.W.2d 586, 587–88 (Tex.Crim.App.1989). In the absence of such proof or request, we will presume that the law of our sister state is the same as the law of Texas. *Id.* Here, the State offered a North Carolina pen packet to prove appellant's conviction of the enhancement offense without offering proof of North Carolina's requirements to prove a final conviction. Additionally, the State did not request that the trial court take judicial notice of North Carolina's requirements. Accordingly, we will apply Texas law in analyzing whether the trial court abused its discretion in admitting the State's pen packet.

■ Under Texas law, in order to establish that the defendant has been convicted of an enhancement offense, the State must (1) prove the existence of the conviction and (2) link that conviction to the defendant. *Beck v. State*, 719 S.W.2d 205, 209–

10 (Tex.Crim.App.1986). Here, while appellant does not argue that the trial court erred in admitting evidence linking him to the conviction, he does argue that the trial court erred in admitting the pen packet to prove the existence of the enhancement conviction itself.

■ To be considered as proof of an enhancement offense in a later case, a pen packet must contain (1) a properly certified judgment and sentence or (2) the functional equivalent of a properly certified judgment and sentence. *See Langston*, 776 S.W.2d at 588. Here, the State's pen packet lacks a properly certified judgment and sentence, so we must determine whether any of the items in the pen packet could reasonably be considered a functional equivalent of such a judgment and sentence.

### Functional Equivalent of Judgment and Sentence

■ A pen packet that contains fingerprints and photographs matching the appellant is a functional equivalent of a judgment and sentence if the included documents are properly authenticated and representative of a final conviction of the enhancement offense. *See Langston*, 776 S.W.2d at 587–88; *Banks v. State*, 158 S.W.3d 649, 653 (Tex.App.-Houston [14th Dist.] 2005, pet. ref'd); *Mitchell v. State*, 848 S.W.2d 917, 918–19 (Tex.App.-Texarkana 1993, pet. ref'd).

In *Mitchell*, the State offered an "Abstract of Judgment" from the court that detailed the style and number of the case, name of defendant, crime, and term of confinement. *See Mitchell*, 848 S.W.2d at 918. The pen packet was certified by the circuit judge, the records clerk of the penal institution, and the clerk of the circuit court. *Id.* The *Mitchell* court held that because the packet contained documenta-

tion of the crime and appellant's final conviction, as well as proper certification from the penal institution, the pen packet was properly admitted into evidence. *Id.* at 918–19.

In *Langston,* the court held that appellant's pen packet was not the functional equivalent of a judgment and sentence because (1) it was missing documents that the certification purported to be included in the admitted pen packet; (2) it included an order that granted appellant's motion to stay the execution of his sentence while a decision on probation was pending; and (3) it included a "commitment order" that did not list the offense or state whether the conviction was final. *See Langston,* 776 S.W.2d at 588.

In *Banks,* the Fourteenth Court of Appeals held that the trial court improperly admitted appellant's pen packet because the documents in the pen packet did not bear the state seal or include a certification of authenticity by a state official acting in their official capacity. *Banks,* 158 S.W.3d at 653 (citing TEX.R. EVID. 902).

Here, appellant's fingerprint card and inmate summary record include his name, physical description, and fingerprints. Sergeant Bell testified that the fingerprint card identifies appellant. In addition, the pen packet includes the crime alleged in the enhancement paragraph, the term of confinement, the location of the prison, the sentencing court, and a detailed status of the inmate's external movements within the Department of Corrections system from admission to release.

Unlike *Langston* and *Banks,* all the documents in appellant's pen packet were certified as authentic by a manager of the Combined Records Section of the North Carolina Department of Corrections. In addition, nothing on the face of the included documents suggests that the judgment or sentence is pending. In fact, the documents detail that appellant was confined in the North Carolina Department of Correction's system for six years of a five—to seven-year term.

Even though appellant's pen packet lacked certified documentation from the sentencing court, given the extent of the information included in the certified documentation from the North Carolina Department of Corrections, it is reasonable to infer that appellant was confined for the final conviction of the felony offense, "Uttering a Forged Document," and remained confined for the term of his sentence.

Because appellant's pen packet is properly authenticated and representative of a final conviction of the enhancement offense, the trial court's decision to admit the pen packet as the functional equivalent of a properly certified judgment and sentence did not lie outside the. reasonable zone of disagreement. Therefore, we hold that the trial court did not abuse its discretion in admitting appellant's North Carolina pen packet as proof of the enhancement paragraph of each indictment.

We overrule appellant's sole point of error.

## Conclusion

We affirm the judgment of the trial court.